UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.:  4:17-cr-499 AGF |
| | ) |
| CHRISTOPHER REED HAGER | ) |
| | ) |
| Defendant. | ) |

**SENTENCING MEMORANDUM**

COMES NOW Defendant, Christopher Hager ("Hager"), by and through counsel, files the following memorandum for sentencing.

**I**

On November 1, 2017, the government filed a one-count indictment, alleging Hager committed wire fraud.  *See* Indictment [Doc. Text #1].  On March 30, 2018, Hager pled guilty to a superseding indictment and one count of access device fraud.  S*ee* Presentence Investigation Report at ¶ 1 [hereinafter "PSR"].  Hager entered his plea pursuant to a written agreement, *see id.* at ¶ 2, in which the government estimated a total offense level of 12.  *See id*. at ¶ 9.  The PSR confirms this estimate, s*ee id*. at ¶ 32, and calculates an advisory Guidelines' range of 15-21 months.  *See id*. at ¶ 69.  Hager does not object to the PSR's Guideline's calculation.  But, for the reasons below, a non-custodial sentence will better serve to the mandate of 18 U.S.C. § 3553(a) and the purposes of sentencing than will a sentence within the advised Guideline's range.

**II**

By mid-2013, Hager had realized a good share of his long-term life goals.  He had a wife of five years, who he had met nine years earlier when he was 20 and she had just turned 19.  *See*

4:14-cr-392 AGF, PSR at ¶ 48.  They had two healthy children, after a series of miscarriages, a four-bedroom home, a rental property, two cars, and a positive net worth and monthly cash flow.  *See id*. at ¶¶ 48, 69.  They had stable jobs, as well, she as an administrative assistant at Ernst & Young and he as a web engineer at a small internet technology firm.  *See id*. at ¶¶ 48, 65.

On October 30, 2013, Hager's future darkened, after the Department of Homeland Security executed a search warrant at his home in connection with a child pornography investigation.  *See id*. at ¶ 14.  Five days later, Hager hired a law firm.  Among other things, his lawyers told him to prepare for a series of life-altering events - a criminal case, imprisonment, a lifelong place on Missouri's sex offender registry, and upheaval of life in general.

On his lawyers' advice, Hager sought counseling to prepare for an uncertain future.  Stress set in quickly, though, and built steadily in the 14 months between the Department of Homeland Security's appearance at his home and his federal indictment.  Hager fixated on what seemed the inevitable undoing of the familial and economic success he had realized - until eight months in when he hit upon a solution to salvage his unraveling future.

Over three-plus years, Hager had helped a longtime friend with a then-four-year-old internet-based company:  MyFridgeFood.com, a home recipe site with contests, cooking tips, and space for users to share information.  Nick Dopuch, Hager's friend, paid Hager for his services.  *See* 4:17-cr-499 AGF, PSR at 15.  Hager wrote code for the company's website, upgraded its user friendliness, and arranged for ads on its webpages.  *See id*. at ¶¶ 15-16.  The ads generated revenue through fees paid by advertisers for space on the company's site and for each "click" on an ad by a site user.  *See id*. at ¶ 16.  Hager figured he could generate income for his family in his impending absence by placing ads on the site under an account in his name.  *See id*.  All told, Hager generated about $86,000 in income from ads between July 2014 and December 2016,

when Dopuch caught on to theft. Hager was still confined at the time, and the plan did not stave off his worst fears.

While imprisoned, his wife filed for divorce. *See id*. at ¶ 42. In the settlement that followed, he lost his home of several years. *See id*. at ¶¶ 44, 64. He now lives in the property he and his wife used to rent[1]. *See id*. at ¶ 64, 66. Old debts grew, new financial obligations mounted, and his positive net worth and monthly cash flow quickly turned negative. *See id*. To make matters worse, the government investigated his theft and, on November 1, 2017, charged him with a second federal offense.

### III

Perhaps bad character explains Hager's decision to exploit his friend's business and re-offend while his first case was still pending. But, according to recent research, the stress he labored under before he was ever charged may explain it, as well. Two conclusions and one fact lend credence to this explanation. First, according to a growing body of research, perceived chronic stress "robustly explains" risky economic decision making. *See* Smarandita Ceccato et al., *Increased Risk Taking In Relation to Chronic Stress in Adults,* p. 9-13 (2015), available at https://www.ncib.nlm.nih.gov/pmc/articles/PMC4732013. Second, under stress, men in particular tend to overestimate the upside of their high-risk decisions and ignore their downside potential. *See generally*, Mara Mather and Nichole R. Lighthall, *Both Risk And Reward Are Processed Differently In Decisions Made Under Stress* (2012), available at https://www.ncib.nlm.nih.gov/pnc/articles/PMC3313579. Third, under ordinary conditions, Hager seems to make safe economic decisions – not risky ones. For example, despite his negative net worth and monthly cash flow, Hager has paid in full the restitution owed on his first

---

[1] Hager moved into the home in December 2018, after the loan on the property was transferred from his name and his ex-wife's into his name alone. He previously lived with his parents. *See* PSR at ¶ 44.

3

offense, *see* Docket Sheet 4:14-cr-392 AGF, paid down his $25,000 student loan debt, maintained compliance with his court ordered child support, timely paid his sons' medical bills, paid for his sons' weekly extracurricular activities, kept current on his mortgage, paid monthly on his credit cards, and almost paid off his divorce attorney.  *See* PSR at ¶ 64; *see also* Exhibit 1 [Sample of Monthly Bills for Self and Children].  All of this at least suggests that Hager's offense conduct involved something more complicated than just bad character and an indifference to the well-being of a friend.

      That said, what to do?  The Guidelines advise imprisonment for between 15 and 21 months.  But, under the circumstances, a non-custodial sentence seems to make more sense.  A term of imprisonment will leave Hager unable to make payment towards his child support, child daycare, child healthcare, and the costs associated with his sons' extracurricular activities.  As a result, and according to his ex-wife with whom no small amount of tension remains, his imprisonment will help neither her nor their children – the youngest of whom is still recovering from the emotional toll exacted by Hager's past incarceration.  *See* Exhibit 2 [Letter from Jessica Hager].  Likewise, imprisonment will only set back the progress Hager has made on his non-family-related obligations.  Among other things, his mortgage, student loans, credit cards, and divorce lawyer bill will all go unpaid if he's incarcerated.  Likely, he'll lose his home and interest will accrue on all but the amount due his divorce lawyer.  In addition, Hager started a second job several months ago.  *See* Exhibit 3(a) [Letter from Benjamin Vidal].  The job pays $55 an hour, *see id*., and Hager works there about 10 to 20 hours a week.  *See id*.  His weekly gross income is about $825, give or take.  Hager can put the full net income from the job towards the restitution he owes Dopuch, an amount just north of $86,000 and for which he's already set aside $1,500 – a small sum in the scheme of things, but a not insubstantial amount given his

4

financial situation.  Hager's incarceration will only make restitution more difficult to pay and delay full compensation to Dopuch, an outcome that would seemingly benefit no one.

IV

For the reasons above, a non-custodial sentence of five years probation, restitution in the amount of $86,628.07, and a payment schedule that requires Hager to give all net earnings from his second job to the named victim of his offense will prove reasonable in the case and produce a more positive outcome for all involved than will a sentence of imprisonment.  A sentence of imprisonment would appear to benefit no one.

Respectfully submitted,

By:    /s/ *Adam D. Fein*
ADAM D. FEIN, # 52255 MO
Attorney for Defendant
120 S. Central Avenue, Suite 130
Clayton, Missouri 63105
(314) 862-4332/Facsimile (314) 862-8050
Email: afein@rsflawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2019, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Ms. Colleen C. Lang, assistant United States attorney.

Case: 4:17-cr-00499-AGF   Doc. #:  54   Filed: 03/04/19   Page: 6 of 6 PageID #: 169